UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | | |
|---|---|---|---|
| DONNA L. SHIPP, | ) | | |
| Plaintiff, | ) | | |
| | ) | CV-97-P-1047-S | |
| -vs.- | ) | | |
| JEFFERSON COUNTY BOARD OF EDUCATION, | ) | | |
| Defendant. | ) | | |

ENTERED
MAY - 4 1999

## MEMORANDUM OPINION

The defendant filed its summary judgment motion on September 15, 1998, asking this court to dismiss the two remaining claims in this case - - an Americans With Disabilities Act ("ADA") claim and a breach of contract claim.[1] The plaintiff objected to the summary judgment motion and filed a response brief on November 10, 1998, arguing that there are genuine issues of material fact that should be sent to a jury. The court heard the motion at the November 13, 1998 motion docket and thereafter took the motion under submission. After careful consideration of the motion, briefs, and evidentiary submissions, the court finds that the defendant's motion for summary judgment is due to be granted.

---

[1] In the complaint, the plaintiff named the Alabama State Department of Education; Jefferson County Board of Education; John B. Harris, individually and in his official capacity; Rafael McDaniel, individually and in his official capacity; and Bruce Wright, individually and in his official capacity. The original complaint also included a claim for negligence for failure to maintain the premises in a safe condition. Through various motions to dismiss, the court dismissed the negligence count and all defendants other than the Jefferson County Board of Education.

1

Facts

Donna Shipp began working as a custodian for the Jefferson County School Board at Fultondale High School in 1993. Although she was initially hired as a sub-custodian, she eventually worked her way up to a six-hour custodian and then to a full-time (eight hour) custodian. Although her work hours increased with each position, her job duties remained the same. As a custodian, Shipp was responsible for such tasks as cleaning, mopping, waxing, unloading and delivering supplies, and emptying trash. During her employment at Fultondale, John Harris, the principal, was her supervisor.

On May 18, 1995, while walking down the stairs at work, Shipp allegedly fell down the stairs and injured herself when the rubber backing came off the top stair. Shipp reported the incident to Harris and then drove herself to the hospital for treatment. At the hospital, the doctors diagnosed Shipp with a fractured foot, gave her medication, and released her. Shipp did not report to work on Friday, May 19, the next day. Shipp testified that she was bedridden from her injuries throughout the weekend. However, Shipp admitted that she went to dinner with a group of friends on Friday, May 19, the day after her fall.

On Monday, May 22, Shipp saw her personal physician, Dr. Donald Ashley. Dr. Ashley examined her ankle and diagnosed her with a soft tissue injury, providing her with a work excuse for one week. A week later, Shipp returned to Dr. Ashley complaining of sinusitus, lower back pain, and foot pain. Dr. Ashley noted that Shipp's condition was one of improvement and gave his consent for her to return to work if she could avoid going up and down steps. Later that same day, Shipp called Dr. Ashley and asked him for an excuse-from-work letter stating that she did not have to return to work because of pain in her back. Dr. Ashley wrote the requested letter, stating that "she should not

2

return to work at this time," but that he "will recheck her back on a weekly basis until she is released to work."

On June 3, 1995, Shipp filled out an application for medical leave. Her request was approved by the Jefferson County Board of Education on June 23, 1995. On July 17, 1995, Shipp asked that eleven days of leave pay be restored to her as a result of her injury. The Board granted this request as well. Because Shipp was a nine-month employee and the summer was beginning, she did not require a medical excuse for the summer period. Shipp did continue to see her primary doctor throughout the summer. However, Dr. Ashley eventually referred her to a specialist at HealthSouth, Dr. Hill.

Sometime during the summer, Shipp submitted a second request for medical leave with a note from Dr. Hill stating that she should not return to work until September 22, 1995. The Board once again approved this request. However, Shipp neither returned to work on September 22, 1995 nor informed the Board of when she would return to work. Shipp did call her primary doctor, Dr. Ashley, on September 22, asking for another work excuse. Although Dr. Ashley provided the excuse, Shipp did not mail the excuse to the Board until October 12, 1995. The excuse contained a handwritten note stating, "P.S. I will let you know when I can return to work." The Board did not receive the letter until October 16, 1995 - - over three weeks after Shipp was supposed to return to work. Apparently, between September 22 and October 16, Shipp never called the Board to inform them that she would be filing another doctor's note and excuse.

Meanwhile, on Monday, September 25, 1995, Harris inquired as to Shipp's whereabouts after failing to hear from her for several days. Harris was evidently having problems keeping the school clean and was having to use one of his coaches to clean until Shipp's return. Because Shipp did not

3

return to work as scheduled and because her absence was creating problems at the school, Harris recommended that Shipp be terminated on September 27, 1995. The recommendation was forwarded to the Board and Shipp was officially terminated on October 26, 1995, effective November 15 of that same year. After her termination by the Board, Shipp contacted the Alabama Education Association ("AEA") "to fight for my job because I think it's their responsibility . . . to give me a job, pay for my bills because I did fall on the job."

In February 1996, after Shipp had been to a second specialist, Dr. Ashley wrote another work excuse in which he acknowledged Shipp's pain but stated that she should be as active and aggressive as possible in her home therapy and that "in the near future she will be able to resume 100% normal activities." At this point, Dr. Ashley restricted her to limited lifting for two weeks and then allowed a gradual increase in activities on a weekly basis.

In March 1996, Shipp was offered a temporary job at Crumly Chapel Elementary School as a custodian. Although Shipp claims that she "could not work" at the time of the new job offer, she began work at Crumley Chapel on March 20, 1996. At the new job, Shipp's duties were primarily to sweep, mop, and empty garbage in the elementary classrooms.[2] Shipp worked at Crumley Chapel on and off for about one month. However, during that one month period, Shipp actually worked only eight days. Shipp apparentlly missed work for various reasons, including visiting her sick mother and undergoing bladder surgery. She requested another health leave for the bladder surgery, which was granted. At the end of May 1996, Shipp's temporary appointment expired. Shipp did not apply for another position, or inquire about another position, and does not know what types of jobs were

---

[2]There is some disagreement as to how often Shipp was required to mop the floors.

available or what she could do.³ At the time of her deposition, Shipp claimed to still be under a doctor's care and unable to work.⁴ However, the evidence shows that Shipp participated in various activities outside of work, including going to football games, going to the tanning bed, cooking, washing and driving a car.

Shipp filed an EEOC charge and subsequently received her Right to Sue letter. This lawsuit was filed on April 28, 1997. Shipp alleges that the defendant violated the ADA by terminating her employment and not offering her a reasonable accommodation. Shipp also states a claim for breach of contract.

## Analysis

### I. ADA

Evidence of intentional discrimination under the ADA can be shown in two ways. First, a plaintiff can present direct evidence of discrimination. Second, a plaintiff can present circumstantial evidence of discrimination because of his disability. Because Shipp has not produced any direct evidence of discrimination, she is forced to rely on the circumstantial evidence under the McDonnell Douglas/Burdine burden-shifting model. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination under the ADA by showing that (1) she has a disability, (2) she is a "qualified individual" (that she

---

³It is Shipp's contention that the Board should have paid her medical bills, kept her custodian job open for her indefinitely, and paid her for at least some of the time she was out on sick leave. Shipp argues that even though she was and apparently still is unable to work, the Board should not have fired her. Shipp says that the Board should have kept her job open for her "until I got able, you know, instead of just up and firing me and just throwing me away."

⁴Shipp apparently had not seen her doctor in months when she made this assertion.

5

can perform the essential functions of the job or position she holds or seeks, with or without reasonable accommodation, and (3) she was discriminated against because of her disability. See 42 U.S.C. § 12132; Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1132, amended on reh'g in part, 102, F.3d 1118 (11th Cir. 1996). Additionally, a plaintiff must show that the employer had actual or constructive knowledge of her disability. See Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 910 (11th Cir. 1996).

A. The Prima Facie Case - Is Shipp "Disabled"?

Under the ADA, a person with "disability" is defined as someone who:

(1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, or
(2) has a record of such an impairment, or
(3) is regarded as having such an impairment.

See 42 U.S.C. § 12102(2). In Shipp's case, she is proceeding under the first prong of the "disability" standard. Therefore, she must prove that:

(1) her condition is an "impairment,"
(2) the "impairment" "substantially limits" a major life activity, and
(3) the activity limited is a "major life activity."

Shipp contends that "she was under a doctor's care" and continues to have pain in her neck and back. Although pain in her neck and back might constitute an impairment, "a physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. . . . The ADA requires that the impairment substantially limit one or more of the individual's major life activities." Gordon, 100 F.3d at 911. While the ADA does not define "substantial limitation" or "major life activity," the EEOC has promulgated regulations that lend guidance. The EEOC regulations define "major life activity"

6

as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(j)(1). "Substantial limitation" is defined as an inability to perform, or a significant restriction in the condition, manner or duration under which an individual can perform a particular major life activity as compared to the average person in the general population. See 29 C.F.R. § 1630(j)(1).

In the present case, Shipp claims that she is substantially limited in her ability to work due to pain in her neck and back.[5] The Eleventh Circuit has stated that "when individuals claim that they are substantially limited in the major life activity of 'working,' their condition 'must significantly restrict [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." Pritchard, 92 F.3d at 1132. While it is undisputed that Shipp has a physical impairment of some degree,[6] merely having a physical impairment is not enough. Shipp must also show that she is substantially limited in her ability to work. Although Shipp insists that she cannot work and is "under a doctor's care," this alone is not sufficient to establish that she is substantially limited in her ability to "work." Indeed, Shipp did return to work at Crumley Chapel Elementary school on a temporary basis. While at Crumley Chapel, Shipp apparently performed well for several days and then provided a doctor's note to excuse her from work for three days - - from April 3 through April 5, 1996. On April 10, only a

---

[5] Based on the briefs and evidence presented, it does not appear that the plaintiff is claiming that she is substantially limited in her major life activities outside of work. Clearly, had the plaintiff attempted to argue that she was substantially limited in her major life activities other than work, the court would find that summary judgment should be granted in favor of the defendant based on the evidence presented.

[6] There is some dispute as to the extent of her injuries. The plaintiff claims that she is still impaired although she has not seen a doctor in months. The defendant argues that the plaintiff had a temporary impairment that is not significant.

7

few days after returning from her excused absence, Shipp failed to report to work for reasons apparently unrelated to her neck and back injuries. Shipp never returned to work. At the end of May 1996, her temporary appointment expired. She has not applied for any other positions and testified that she does not know what types of jobs are available or what she could do. As a result, although Shipp may have an impairment, the evidence clearly shows that the impairment does not rise to the level of substantially limiting a major life activity. The plaintiff has not shown that she is unable to perform either a class of jobs or a broad range of jobs as compared to the average person. Shipp's mere assertions that she is unable to work cannot sustain her claim.

Because Shipp is not "disabled" as required by the ADA, she does not fall within its protection. Accordingly, Shipp has not presented a prima facie case of discrimination based on a disability.[7] Summary judgment is due to be granted in favor of the defendant.

## II. Breach of Contract Claim

In order for Shipp to recover for breach of contract, she must show (1) the existence of a contract, (2) the breach of that contract, and (3) damages. See Cocke v. Odom, 385 So. 2d 1321 (Ala. Civ. App. 1980). Apparently, Shipp's breach of contract claim was initially based on an alleged failure by the Board to pay her medical expenses incurred as a result of her fall on school property. In her deopsition, Shipp cites to worker's compensation laws as the basis of her claim:

> Q: Why do you think that the Board of Education ought to pay you either benefits or your medicals for an on-the-job injury?
> A: Sir, I was on their premises. They failed to replace the stairs. Sustained my injury. My medical bills, my doctor bills, my copays and all of that I would not be in the debt

---

[7]Even if Shipp was able to show that she was "a qualified person with a disability," there is no evidence that she was discriminated against because of that disability. Indeed, Shipp testified that the Board "didn't know the truth" about her injury and "did not know what kind of injury" she had.

8

> that I am in if they would have paid.
> Q: If they would have handled it?
> A: Yes, sir.
> Q: What evidence or what makes you think that they were supposed to pay for that?
> A: Because most companies has got a board of workman's comp.

Shipp admits in her deposition, however, that she learned after filing her complaint that she was not covered by worker's compensation.[8] Therefore, her claim for breach of contract based on a worker's compensation analysis is due to be dismissed. Additionally, in her reply brief, Shipp also seems to assert a breach of contract claim as a result of the defendant's "denying her request for medical leave in October 1995 and in terminating her on November 15, 1995 due to her disability." The problem with Shipp's second breach of contract argument is that she has not shown that any employment contract existed. In her deposition, Shipp testified that she was not a tenured employee. According to Shipp's evidentiary submissions, the Board may "discipline, suspend, reassign, transfer, and terminate any employee [who is not tenured] in its discretion, with or without cause." See Exhibits 4, 9, 11, 14, 16, and 17. Because Shipp has not shown that she was anything other than an at-will employee, her breach of contract claim for wrongful termination is due to be dismissed. As for her breach of contract claim relating to the denial of her request for medical leave, Shipp has not come forward with proof of the terms of the medical benefits contract. She cannot prove a breach of the employee benefits contract, if one in fact existed.[9] Furthermore, the Board granted Shipp's requests for medical leave but fired her after she failed to report to work or inform the Board of further need

---

[8] Boards of Education are not subject to mandatory workmen's compensation laws in Alabama. See Ala. Code § 25-5-50 (1975) (noting, however, that a school board is not prohibited from voluntarily providing such coverage with local or available funds).

[9] The plaintiff has not asserted a Family Medical Leave Act ("FMLA") claim.

9

for medical leave at the beginning of the fall 1996 school year. While Shipp contends that the Board should have paid her medical bills and kept her job open for her indefinitely even though she failed to inform the Board of any need for additional medical leave in the fall of 1996, her allegations do not result in a breach of contract. Summary judgment is due to be granted to the defendant.

## Conclusion

For the foregoing reasons, the court finds that the defendant's summary judgment motion is due to be granted in full.

Date: ___May 4___, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Mary Lee Abele
    Whit Colvin